02-09-344-CR












 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-09-00344-CR

 

 


 
 
 Anthony Griffith
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 235th District Court OF Cooke COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

In
four points, Appellant Anthony Brent Griffith appeals his conviction for
possession of a controlled substance (methamphetamine), one gram or more but
less than four grams.  See Tex. Health & Safety Code Ann.
§ 481.115(c) (Vernon 2009).  We affirm.

II.  Factual and Procedural History

On
January 23, 2008, around 7:30 p.m., Gainesville Police Officer James Birdsell was watching a “drug house” at 1505 North
Culberson.  He saw someone leave the house and get into
the vehicle parked in the front yard.  He followed the vehicle as it
traveled south on North Culberson, turned left on Medal of Honor Boulevard, and
then turned right on South Weaver Street.  The vehicle properly signaled
the left-hand turn onto Medal of Honor Boulevard but not the right-hand turn
onto South Weaver Street.  That is, the driver of the vehicle failed to
signal the turn prior to 100 feet of the intersection, although the vehicle did
signal as it made the turn.  On cross-examination, Officer Birdsell testified that he could have seen a hand signal if
the driver had made one because there were street lights in the area.  He
stated that he followed the vehicle to develop probable cause for a possible
traffic stop and that failing to signal a turn within 100 feet was a violation
of law.[2]

Officer
Birdsell activated his vehicle’s emergency lights and
made a traffic stop.  He asked the three people inside the vehicle for
identification and then returned to his vehicle to run their names and
birthdates.  Griffith was the front seat passenger.  Officer Birdsell learned that Griffith had outstanding warrants for
his arrest through the justice of the peace court and contacted the constable, who
confirmed Griffith’s warrants.  When Griffith exited the vehicle, Officer Birdsell placed him in handcuffs and then searched
him.  Officer Birdsell located a clear plastic
bag with a white powdery substance in Griffith’s front right pocket.

Texas
Department of Public Safety (DPS) forensic chemist
Jennifer Rumppee testified that she analyzed the
contents of the plastic bag and that she concluded that it contained
methamphetamine.  The substance’s net weight was 2.38 grams.

Griffith
pleaded not guilty to possession of a controlled substance and not true to the
enhancement paragraph, which alleged that he had two prior felony convictions
for robbery and possession of a controlled substance.  The jury found
Griffith guilty and the enhancement allegations true and assessed punishment at
life imprisonment.  The trial court sentenced him accordingly, and this
appeal followed.

III.  Sufficiency of the Evidence

In
his third point, Griffith complains that the evidence is insufficient to support
the jury’s guilty verdict, contending that the indictment did not allege that
the “more than one but less than four grams” of methamphetamine included
“adulterants and dilutants” and that the State’s
expert testified that no quantitative analysis had been performed on the drug
sample, so she could not state the amount of pure methamphetamine, and admitted
that it could have contained less than one gram of methamphetamine.

“Controlled
substance” means “a substance, including a drug, an adulterant, and a dilutant . . . .  The term includes the aggregate
weight of any mixture, solution, or other substance containing a controlled
substance.”  Tex. Health & Safety Code Ann. §
481.002(5) (Vernon 2009) (emphasis added).  “Adulterant or dilutant” means “any material that increases the bulk or
quantity of a controlled substance, regardless of its effect on the chemical
activity of the controlled substance.”  Id.
§ 481.002(48).  “[T]he State is no longer required to
determine the amount of controlled substance and the amount of
adulterant and dilutant that
constitute the mixture.”  Melton v. State,
120 S.W.3d 339, 344 (Tex. Crim. App. 2003). 
The State has to prove only that the aggregate weight of the controlled
substance mixture, including adulterants and dilutants,
equals the alleged minimum weight.  Id.

Here,
Officer Birdsell testified that he found a clear
plastic bag with a white powdery substance in Griffith’s front right pocket,
and Rumppee testified that she analyzed the contents
of the plastic bag, that it contained methamphetamine, and that the substance’s
net weight was 2.38 grams.  Therefore, the evidence is sufficient to
support the jury’s verdict convicting Griffith of possession of a controlled
substance (methamphetamine), one gram or more but less than four grams.  See
Tex. Health & Safety Code Ann. § 481.115(c); Melton, 120 S.W.3d at 344; see also Zone v. State, 118 S.W.3d 776, 777 (Tex. Crim. App. 2003) (holding evidence
sufficient when chemist tested random sample of five of twelve crack rocks and
testified that the total weight of the rocks was 1.3 grams).  We overrule
Griffith’s third point.

IV.  Suppression

In
his second point, Griffith argues that the trial court violated his federal and
state constitutional rights against illegal searches and seizures by overruling
his objections and denying his motion to suppress.  Griffith contends that
the driver of the vehicle that was stopped “did nothing to warrant the stop
other than fail to signal intent to turn.”  Specifically, he complains
that the officer followed the vehicle until the driver “finally made a traffic
violation.  There were insufficient factors [to] justify the initial
seizure of the driver and Appellant and therefore the arrest of Appellant
violated the Fourth Amendment and Article 38.23 of the Texas Code of Criminal
Procedure.”

Probable
cause for a warrantless arrest requires that the officer have a reasonable
belief that, based on facts and circumstances within the officer’s personal
knowledge, or of which the officer has reasonably trustworthy information, an
offense has been committed.  Torres v. State, 182
S.W.3d 899, 902 (Tex. Crim. App. 2005). 
Probable cause must be based on specific, articulable
facts rather than the officer’s mere opinion.  Id.; Ford v.
State, 158 S.W.3d 488, 493 (Tex. Crim. App.
2005).  We use the “totality of the circumstances” test to determine
whether probable cause existed for a warrantless arrest.  Torres, 182 S.W.3d at 902.  An
officer has probable cause to stop a driver if he observes the driver commit a
traffic offense.  See State v. Gray, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005); State v. Ballman, 157 S.W.3d 65, 70
(Tex. App.—Fort Worth 2004, pet. ref’d).

Officer
Birdsell testified that he saw the driver of the
vehicle fail to signal a turn prior to 100 feet of the intersection, a traffic
offense.  See Tex. Transp. Code Ann. § 545.104(b).  Therefore,
Officer Birdsell had probable cause to stop the
vehicle.  See Gray, 158 S.W.3d at 469–70;
Ballman, 157 S.W.3d
at 70.  We overrule Griffith’s second point.

V. 
Article 38.23 Instruction

In
his fourth point, Griffith contends that the trial court erred by denying his
requested article 38.23 instruction, which would have allowed the jury to determine
whether his stop and detention were reasonable under the circumstances.

A
defendant’s right to the submission of a jury instruction under article 38.23
is limited to disputed issues of fact that are material to his claim of a
constitutional or statutory violation that would render evidence inadmissible. Madden
v. State, 242 S.W.3d 504, 509–10 (Tex. Crim. App.
2007); see also Holmes v. State, 248 S.W.3d
194, 199 (Tex. Crim. App. 2008) (“There is, of course, nothing to instruct the
jury about if the suppression question is one of law only, and there is nothing
to instruct the jury about unless there is affirmative evidence that raises a
contested fact issue.”).  To raise a disputed fact issue warranting an
article 38.23(a) jury instruction, there must be some affirmative evidence that
puts the existence of that fact into question.  Madden, 242 S.W.3d at 513.  “The
disputed fact must be an essential one in deciding the lawfulness of the
challenged conduct.”  Id. at 511.

Officer
Birdsell presented the only evidence at trial
regarding the facts surrounding the traffic stop:  He stated that he saw
the driver fail to signal a turn prior to 100 feet of the intersection and that
he did not see the driver make a hand signal.  No affirmative evidence puts
these facts into question.  See id.  Therefore Griffith was
not entitled to an article 38.23 instruction.  We overrule Griffith’s
fourth point.

VI.  Ineffective Assistance of Counsel

In
his first point, Griffith complains that he received ineffective assistance of
counsel at trial.  He argues that his trial counsel: (1) failed to
properly present a motion for continuance when Griffith was not ready for
trial; (2) failed to properly relay and explain a potential plea bargain; (3)
failed to present possible witnesses on his behalf and medical testimony that
would have mitigated Griffith’s involvement in the offense by showing that he
was experiencing disabling migraine headaches; (4) failed to properly urge
Griffith’s motion to suppress; and (5) refused to allow Griffith to testify
during the punishment phase of trial.

To
establish ineffective assistance of counsel, appellant must show by a
preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct.
2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v.
State, 65 S.W.3d 59, 62B63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d
808, 812 (Tex. Crim. App. 1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

The
State points out that Griffith has directed this court
to no evidence in the record to support his allegations.  Rather, Griffith
directs us to the affidavit that he attached to his motion for new trial.
 In his affidavit, Griffith alleges the following:

[M]y attorney failed
to perform the following during my trial:  he failed to properly present a
Motion for Continuance; he failed to properly relay and explain to me a
potential plea bargain; he failed to present a possible witness for my behalf;
he failed to present medical testimony that would have mitigated my involvement
in this case; he failed to properly present and urge a Motion to Suppress, and
he failed to allow me to testify during the punishment phase of my trial. 

 

The
trial court denied Griffith’s motion for new trial.

If a
party does not refer the appellate court to the pages in the record where the
error allegedly occurred, the appellate court may properly overrule the point
as inadequately briefed.  Busby v. State, 253 S.W.3d 661, 673 (Tex.
Crim. App.) (stating that the court Ahas no
obligation to construct and compose appellant=s
issues, facts, and arguments >with appropriate
citations to authorities and to the record=@), cert.
denied, 129 S. Ct. 625 (2008).  Furthermore, the record must
affirmatively demonstrate the alleged ineffectiveness.  Salinas,
163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).

With
regard to Griffith’s complaint about counsel’s failure to properly present a
motion for continuance when Griffith was not ready for trial, he does not
direct us to which of counsel’s motions for continuance forms the basis for his
complaint.[3] 
      Furthermore, he directs us to nothing, and
nothing in the record describes, any potential plea bargain, who the “possible
witnesses” are and what they would have testified on Griffith’s behalf, or how
such witnesses’ testimonies would have mitigated his possession of
methamphetamine.[4] 
And nothing in the record supports Griffith’s allegation that his trial counsel
refused to allow him to testify during the punishment phase.  We overrule
these portions of Griffith’s first point as inadequately briefed.  See
Busby, 253 S.W.3d at 673.

Griffith’s
trial counsel filed a motion to suppress “fruits of illegal detention” on
January 29, 2009, and raised his Fourth Amendment and article 38.23 arguments
at trial, and the trial court considered these arguments before overruling the
objections and denying Griffith’s request for an article 38.23 instruction in
the jury charge.  Based on the record, and our resolution of Griffith’s
second point, we conclude that the record does not affirmatively show
ineffectiveness.  See Salinas, 163 S.W.3d at 740.  We overrule the remainder of
Griffith’s first point.

VII.  Conclusion

Having
overruled all of Griffith’s points, we affirm the trial court’s judgment.

 

 

PER CURIAM

 

PANEL: 
MCCOY, MEIER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 10,
2011 

 











[1]See
Tex. R. App. P. 47.4.





[2]The
trial court took judicial notice of section 545.104 of the transportation code,
which states, “An operator intending to turn a vehicle right or left shall
signal continuously for not less than the last 100 feet of movement of the
vehicle before the turn.”  Tex. Transp. Code Ann. §
545.104(b) (Vernon 2010).  The trial court also took judicial
notice of section 545.106(a), which states that turn signals may be made by
using hand and arm or by using lights.  Id.
§ 545.106(a) (Vernon 2010).





[3]Counsel
filed a sworn motion for continuance on January 29, 2009, requesting that the
trial date be reset from February 2, 2009, because “The Defendant is suffering
from severe migraine headaches and other serious physical problems that need
immediate care and [that] prevent him from being able to assist Counsel in his
defense.”  And counsel filed a motion for continuance on August 20, 2009,
seeking to reset the trial date from August 24, 2009, because he had been
unable to locate “an important defense witness who was present at the time of
arrest, the driver of the vehicle in which [Griffith] was riding.” 
Counsel also filed an agreed motion for continuance on November 7, 2008, which
the trial court granted.





[4]We
note that during punishment, his sister described Griffith’s past physical
problems and migraine headaches, and his medical records were admitted as a
defense exhibit.